UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **JOSHUA REYNOLDS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 08-CV-2081 |
| | ) |
| **CHAMPAIGN-URBANA MASS TRANSIT** | ) |
| **DISTRICT, and WILLIAM VOLK,** | ) |
| **Managing Director,** | ) |
| | ) |
| **Defendants.** | ) |

## OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#24) filed by Defendant, Champaign-Urbana Mass Transit District. This court has carefully reviewed the arguments of the parties and the documents provided by the parties. Following this careful and thorough review, Defendant's Motion for Summary Judgment (#24) is GRANTED. In addition, Plaintiff's claim against Defendant William Volk is dismissed with prejudice and Plaintiff's Motion to Amend Discovery Order (#28) is DENIED as moot.

FACTS

Plaintiff, Joshua Reynolds, began his employment with Defendant in March 2001. He was hired as a bus operator. Plaintiff's employment was terminated in February 2007. In a letter dated February 6, 2007, Robert Patton, Director of Operations for Defendant, stated that Plaintiff was terminated. Patton stated that "[u]pon investigation it was confirmed that you in fact were inappropriately adding extra time to your work day and in some cases had left the property prior to the time you had recorded on your waybill." On December 7, 2007, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). On January 31,

2008, the EEOC issued a Notice of Right to Sue.

On April 1, 2008 Plaintiff filed a Motion for Leave to Proceed in forma pauperis (#1). On April 8, 2008, Plaintiff's Motion was granted and his pro se Complaint (#6) against Defendant and William Volk was filed in this court. Plaintiff's Complaint was written on a form which stated that the action was brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. Plaintiff alleged that Defendant began a "harassment campaign" after being notified of a work-related shoulder problem in June 2004. Plaintiff alleged that, in 2004 through 2007, he was "harassed by supervisors, denied lunch/restroom breaks, written up for using restroom during work, given disciplinary actions from fabricated infractions." Plaintiff also alleged that he was "[h]arassed and not given promotions/demoted by management." Plaintiff alleged that he was terminated in 2007 "as soon as management received word that my doctor had prescribed an ergonomic study to be done on the job for my shoulder."

On May 13, 2008, Defendant filed its Answer (#11). Defendant denied that any harassment campaign was begun against Plaintiff, denied any harassment by Plaintiff's supervisors, denied that any discipline was imposed on Plaintiff without legitimate business purposes and denied that there was any connection between any prescribed physical therapy or other treatment and Plaintiff's discharge. Also on May 13, 2008, Volk filed a Motion to Dismiss (#12), arguing that Plaintiff's pro se Complaint did not include any mention of any wrongdoing on the part of Volk, individually.

On June 17, 2008, Magistrate Judge David G. Bernthal entered a Report and Recommendation (#17). Judge Bernthal recommended granting Volk's Motion to Dismiss and allowing Plaintiff leave to amend his Complaint to allege his claims against Volk by stating what Volk did. Plaintiff did not file any Objections to Judge Bernthal's Report and Recommendation.

Instead, on July 2, 2008, Plaintiff filed a Motion for Extension of Time to Amend Complaint (#20). On July 14, 2008, this court entered an Order (#23). This court accepted Judge Bernthal's Report and Recommendation. Therefore, this court granted Volk's Motion to Dismiss and allowed Plaintiff 14 days to amend his Complaint. This court further concluded that 14 days from the date of this court's Order was adequate time for Plaintiff to file an amended Complaint, so this court denied Plaintiff's Motion for Extension of Time.

Plaintiff did not file an amended Complaint within 14 days of this court's Order or, in fact, at any time. Accordingly, the claim against Volk is dismissed with prejudice and Volk is terminated as a party to this case.

On October 2, 2008, Defendant filed a Motion for Summary Judgment (#24), with attached documentation. In its Statement of Undisputed Material Facts, Defendant stated that, during Plaintiff's employment with Defendant, he was paid on an hourly basis and was eligible for overtime pay. Defendant stated that, in order to apply for overtime, bus operators were required to turn in timesheets evidencing the amount of time worked beyond their regularly scheduled hours. Defendant also stated that, during the relevant time period, Defendant's employee handbook stated that "intentionally falsifying any reports, written or oral, related to job duties or responsibilities" constituted a Class A violation which can result in discharge. Defendant stated that its employee handbook was available to its employees in hard copy or electronic form.

Defendant stated that, around December 2006, Robert Patton, Defendant's Director of Operations, discovered there were discrepancies between Plaintiff's timesheets and Defendant's records. Patton then began an investigation of these discrepancies. Based upon Plaintiff's timesheets, videotapes of Plaintiff's bus, supervisor reports and accounting records, Patton

determined that Plaintiff had engaged in a pattern of falsifying his timesheets since May or June of 2006. Plaintiff's falsification of his timesheets resulted in Defendant paying him overtime pay which he did not earn. Patton terminated Plaintiff's employment in February 2007 solely because the falsification of his timesheets violated Defendant's written employment policies.

In support of its Statement of Undisputed Facts, Defendant attached Patton's affidavit and a copy of the applicable portion of Defendant's employee handbook. Defendant also attached copies of numerous supervisor reports, incident reports and Plaintiff's timesheets. This documentation showed that supervisors and other witnesses submitted reports which stated that Plaintiff completed his work at times earlier than the time Plaintiff wrote on his timesheets. Defendant also attached a copy of Patton's letter to Plaintiff, dated February 6, 2007, in which Patton informed Plaintiff that his investigation confirmed that Plaintiff was "inappropriately adding extra time to your work day and in some cases had left the property prior to the time you had recorded on your waybill." In his letter, Patton also stated that, under the terms of the employee handbook, this was a Class A violation which could result in discharge. Patton stated that, based upon the issues involved, Plaintiff was discharged as an employee of Defendant, effective immediately.

Defendant argued that, given every benefit of the doubt, Plaintiff's Complaint appeared to allege claims under the Americans with Disabilities Act (ADA) for discrimination and retaliation. Defendant argued that it was entitled to summary judgment on Plaintiff's discrimination claim under the ADA because: (1) Plaintiff has not shown that he is disabled under the definition of the ADA; (2) Plaintiff has not shown a prima facie case of discrimination under the ADA; and (3) there is no question that Defendant terminated Plaintiff for a legitimate, non-discriminatory reason. Defendant also argued that it was entitled to summary judgment on Plaintiff's retaliation claim under the ADA

because: (1) Plaintiff has not shown evidence in support of a prima facie case of retaliation under the ADA; and (2) Defendant's reason for terminating Plaintiff was legitimate and non-discriminatory.

On November 12, 2008, Plaintiff filed his Response to Defendant's Motion for Summary Judgment (#26). Plaintiff stated that he was injured while working for Defendant and had subsequent shoulder surgery. Plaintiff stated that, when he returned to work in 2005, he was immediately subjected to harassment, biased write-ups and other unfair retaliation. Plaintiff stated that he asked upper management to end the campaign against him but they never did. Plaintiff also stated that Defendant never made any attempt to accommodate his disability. Plaintiff stated that, during the last few months before he was terminated, he missed several days of work because of his shoulder. Plaintiff stated that he was seen by several doctors. On January 23, 2007, the company doctor released him to return to work. On January 31, 2007, his shoulder doctor prescribed an ergonomic study to be done at work. Plaintiff stated that, while he was at work on February 3 and February 4, 2007, he talked openly about his doctor prescribing the ergonomic study. Plaintiff stated that, on February 5, 2007, Patton and Tom Costello, Defendant's assistant Managing Director, made false allegations that he was not doing a post-trip inspection but was claiming on his timesheets that he was. Plaintiff said these allegations were "completely ludicrous." Plaintiff stated that Patton asked him to resign, and, when he refused, Patton terminated his employment.

Plaintiff then pointed out problems that he perceived with some of Defendant's documentation. Plaintiff also stated that Patton was the only witness at his unemployment hearing, and it was determined that he was not disqualified for unemployment benefits because Patton's testimony was not sufficient to show that Plaintiff was discharged for misconduct. Plaintiff attached

a copy of the unemployment decision. Plaintiff signed his Response and stated that he "certifies that the statements in the foregoing are true and correct."

On November 21, 2008, Defendant filed a Reply to Plaintiff's Response (#27). Defendant does not dispute that Plaintiff was injured while working for Defendant and had subsequent shoulder surgery or that Plaintiff's doctor prescribed an ergonomic study to be done on the job. However, Defendant argued that Plaintiff provided no evidence that he was disabled under the provisions of the ADA. Defendant also argued that Defendant provided ample evidence that Patton had sufficient, even abundant, information to warrant the termination of Plaintiff for falsifying timesheets. Defendant attached a supplemental affidavit of Patton. In this affidavit, Patton stated that, at the time of Plaintiff's termination, Patton "was unaware that there would be additional tests completed for his shoulder as part of his workers compensation claim against [Defendant]." Patton also stated that he was unaware of any requests Plaintiff made for accommodations. Defendant also argued that the decision of the Illinois Department of Employment Security that Plaintiff was eligible for unemployment benefits was not material to Plaintiff's claims in this case.

On December 16, 2008, Plaintiff filed a Supplement to his Response (#29). Plaintiff attached copies of letters he had written in 2006 requesting that he be returned to a position as a line instructor. In his letters, Plaintiff expressed his desire to return to that position, but did not request an accommodation and did not say that he could not perform the duties of a bus operator because of his shoulder injury. In his Supplemental Response, Plaintiff also argued, without providing supporting evidence, that two supervisors for Defendant routinely falsified supervisor reports without being disciplined. In addition, Plaintiff stated that he had requested breaks as an accommodation for his work injury but was denied breaks. Plaintiff stated that Defendant denied

breaks to all of its bus operators in violation of Illinois law.

ANALYSIS

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin Cmty. High Sch. Dist. 303, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002). However, "the mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004). Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." Kampmier v. Emeritus Corp., 472 F.3d 930, 936 (7th Cir. 2007), citing Celotex Corp., 477 U.S. at 322-23.

7

PLAINTIFF'S CLAIM

Although Plaintiff's pro se Complaint was written on a form which stated that it was brought under Title VII of the Civil Rights Act of 1964, Plaintiff has not alleged that he is a member of a protected group under Title VII. Instead, Plaintiff referred to his shoulder injury. This court therefore agrees with Defendant that Plaintiff's claim appears to actually be brought under the ADA.

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of [his] disability." Lloyd v. Swifty Transp., ___ F.3d ___, 2009 WL 48207, at *5 (7th Cir. 2009), quoting 42 U.S.C. § 12112(a). In order to establish a prima facie case of discrimination under the ADA, a plaintiff must submit evidence showing that: (1) he is disabled within the meaning of the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably. Lloyd, 2009 WL 48207, at *5; Rooney v. Koch Air, LLC, 410 F.3d 376, 380-81 (7th Cir. 2005). If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Lloyd, 2009 WL 48207, at *5. The plaintiff must then prove by a preponderance of the evidence that the defendant's reasons are pretextual. Lloyd, 2009 WL 48207, at *5. The analysis for a retaliation claim is similar: "the plaintiff must show that he engaged in protected activity, was performing his job satisfactorily, and was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer." Lloyd, 2009 WL 48207, at *5.

This court agrees with Defendant that Plaintiff's discrimination claim fails because he has not shown that he is "disabled" in the special sense that the ADA uses that term. See Rooney, 410

F.3d at 381. An individual can prove that he is disabled for ADA purposes in one of three ways: (1) he has a physical or mental impairment that substantially limits one or more major life activities; (2) he has a record of such an impairment; or (3) he is regarded as having such an impairment by his employer. 42 U.S.C. § 12102(2); Sutton v. United Air Lines, 527 U.S. 471, 478 (1999); Rooney, 410 F.3d at 381. In order to meet this burden, a plaintiff must show that his impairment "substantially limits one or more major life activities" or that his employer regarded him as having "an impairment that substantially limits one or more major life activities." Rooney, 410 F.3d at 381-82. Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship, 209 F.3d 678, 683-84 (7th Cir. 2000), quoting 29 C.F.R. § 1630.2(i). "Substantially limits" means that "a person is either unable to perform a major life activity or is significantly restricted as to the condition, manner, or duration under which the individual can perform the major life activity as compared to the average person in the general population." Armour v. City of Gary, 2006 WL 1660749, *7 (N.D. Ind. 2006), citing 29 C.F.R. 1630.2(j)(1); Sinkler, 209 F.3d at 685. This is a high standard to meet. Scheerer v. Potter, 443 F.3d 916, 919 (7th Cir. 2006), citing Toyota Motor Mfg. Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002).

"To survive summary judgment, the plaintiff must provide specific facts establishing that there is a genuine issue of material fact as to whether he is substantially limited in a major life activity." Scheerer, 443 F.3d at 919. "Specific facts are required; conclusory allegations will not do." Scheerer, 443 F.3d at 919. An ADA claimant must specify which major life activity has been limited and only those grounds specifically raised will be considered by this court. See Sinkler, 209 F.3d at 683; Thompson v. Archer Daniels Midland Co., 174 F. Supp. 2d 833, 838 (C.D. Ill. 2001).

In this case, Plaintiff has stated only that he has a shoulder injury which required surgery. Plaintiff has presented no evidence or argument that, because of the shoulder injury, he is substantially limited in any major life activity. Moreover, Plaintiff himself stated that, after the shoulder surgery, he returned to work in 2005 and that, after he had some shoulder problems in January 2007, he was released to return to work. Because he remained able to perform his job after his injury, it is clear that Plaintiff cannot contend that he is substantially limited in the major life activity of working. See Squibb v. Mem'l Med. Ctr., 497 F.3d 775, 782 (7th Cir. 2007); Rooney, 410 F.3d at 381. Because Plaintiff has not shown that he is disabled under the ADA, he is not entitled to protection under the statute, including accommodations, and there is no need to consider the other elements of a prima facie case. See Rooney, 410 F.3d at 381.

After careful consideration of the voluminous documentation provided by Defendant, this court further concludes that, even if Plaintiff could establish a prima facie case of discrimination under the ADA regarding his discharge, his claim would fail. Defendant has provided more than ample evidence that it had a strong basis for believing that Plaintiff was falsifying his timesheets. This provides a legitimate, nondiscriminatory basis for Plaintiff's discharge. Plaintiff's attempts to call some of this evidence into question fall far short of showing that Defendant's legitimate reason for terminating his employment was a pretext for discrimination based upon disability.

As far as Plaintiff's claim of retaliation under the ADA, this court concludes that Plaintiff failed to provide evidence that he engaged in protected activity prior to any alleged retaliatory acts. The ADA anti-retaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a); Squibb, 497 F.3d at 786, n.7. The record shows that Plaintiff did not file a charge of discrimination until after his employment was terminated, which was also long after the alleged harassment took place. Therefore, Defendant's actions could not have been in retaliation for Plaintiff's action in filing a charge.

This court recognizes that Plaintiff has stated that he complained about harassment and asked for breaks as an accommodation for his work injury. However, to the extent that these complaints could be considered protected activity under the ADA, Plaintiff has not shown that similarly situated employees who did not complain were treated more favorably. In fact, Plaintiff stated that Defendant did not allow breaks for any bus operators, in violation of Illinois law. Therefore, Plaintiff cannot show that he "was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer." See Lloyd, 2009 WL 48207, at *5.

Finally, this court also agrees with Defendant that Plaintiff may actually be attempting to assert a claim that he was the victim of retaliation and wrongful discharge under Illinois common law, based upon his filing of a workers compensation claim. This court further agrees with Defendant that, if that is the case, this court lacks jurisdiction to render a decision regarding such a claim. The parties here are not diverse and Defendant is entitled to summary judgment as to the only possible federal claim. This court therefore declines to exercise supplemental jurisdiction over any state law claim asserted by Plaintiff.

IT IS THEREFORE ORDERED THAT:

(1) Because Plaintiff did not file an amended complaint within 14 days after the claim against William Volk was dismissed without prejudice, the claim against William Volk is dismissed with prejudice and William Volk is terminated as a party to this case.

(2) Defendant's Motion for Summary Judgment (#24) is GRANTED. Judgment is entered in favor of Defendant and against Plaintiff on Plaintiff's Complaint (#6).

(3) This case is terminated. Therefore, Plaintiff's Motion to Amend Discovery Order (#28) is DENIED as moot.

ENTERED this 28th day of January, 2009.

s/MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE